William B. EGGLESTON, Plaintiff–Appellant,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant–Appellee.

No. 86–1859.

United States Court of Appeals, Tenth Circuit.

July 14, 1988.

---

* The bracketed material is contained in footnote 9 of the district court's order.

Eric G. Melders, Oklahoma City, Okl. (Jack Gray, Oklahoma City, Okl., with him on the briefs), for plaintiff-appellant.

Marguerite G. Lokey, Asst. Regional Counsel, Office of Gen. Counsel, U.S. Dept. of Health and Human Services, Dallas, Tex. (Edwin L. Meese, U.S. Atty. Gen., William S. Price, U.S. Atty., W.D. Okl., Gayla Fuller, Chief Counsel, Region VI and Patrick A. Hudson, Principal Regional Counsel, Social Security Disability Litigation Branch, Office of Gen. Counsel, U.S. Dept. of Health and Human Services, Dallas, Tex., with her on the brief), for defendant-appellee.

Before McKAY, SEYMOUR, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

This case involves the denial of disability benefits under the Social Security Act. The claimant, William Eggleston, was born on July 23, 1930, and has a third grade education. He has been employed primarily as a welder. He suffered injuries to his back and has had surgery three times. He filed for disability benefits on December 7, 1979. His claim was denied at every step in the administrative process. He then appealed to the district court. The district court remanded the case to the Secretary for reasons not relevant to this appeal. On remand, Eggleston's claim was again considered by an Administrative Law Judge (ALJ) and denied. The Secretary accepted the ALJ's decision, the district court affirmed and Eggleston appeals. We affirm in part, and reverse in part.

In assessing Eggleston's impairments, the ALJ considered Eggleston's testimony, and reports by Eggleston's former treating physician, Veterans Administration Hospital clinics, five examining physicians, and one medical advisor who did not examine the claimant. The ALJ found that Eggleston has a severe back impairment and mild pulmonary system impairments, and he experiences pain but not disabling pain. The ALJ concluded that Eggleston could not return to his former work as a welder but that he retained the residual functional capacity to perform light work.

The ALJ then considered whether there are jobs classified as light work that Eggleston could perform. He considered Eggleston's age, education and transferable skills. The ALJ found that although Eggleston is academically illiterate, he is functionally literate. The ALJ relied on testimony of three vocational experts in finding that Eggleston had acquired skills in his previous work that could be transferred to light work. The ALJ then considered the closest applicable rule in the Medical–Vocational Guidelines (Grids), 20 CFR Part 404, Subpt. P, App. 2, table 2, Rule 202.12, and concluded that Eggleston is not disabled.

Our scope of review in Social Security disability claims is narrow. We must affirm the decision of the Secretary if the decision is supported by substantial evidence, 42 U.S.C. § 405(g); *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir.1988), and he gives adequate reasons for his decision, *Reyes*, 845 F.2d at 244.

## I.

Eggleston's allegations of error fall into two groups. The first group of challenges involves the ALJ's determination that his impairment is not of the severity of an impairment listed in the regulations, 20 C.F.R. Part 404, Subpt.P.App.1 § 1.05 C, and that he retains the capacity to do light work.

Eggleston argues that the ALJ did not give proper weight to a report prepared by Dr. Freede who had been his treating physician and performed his surgeries. In *Reyes*, we stated that "the Secretary must give substantial weight to the evidence and opinion of the claimant's treating physician, unless good cause is shown for rejecting it." 845 F.2d at 244–45. However, a treat-

ing physician's opinion may be rejected if the Secretary gives specific, legitimate reasons for doing so. *Id.* at 245.

■ The record contains several reports prepared by Dr. Freede while Eggleston was in his care. These reports indicate that Eggleston was not so severely disabled that he could not return to his work as a welder. The record also contains a report prepared by Dr. Freede approximately three years after he last saw Eggleston. This report indicates that Eggleston is completely disabled. It is this later report upon which Eggleston bases his argument. Only one examining physician agreed with Dr. Freede's later report. The other four examining physicians found that Eggleston suffered some, but not total, disability. The ALJ's opinion indicates that he considered all of the medical reports in the record in making his determination that Eggleston retains the capacity to do light work. Considering the examining physicians' findings, the inconsistencies between the reports Dr. Freede made while treating Eggleston and the later report, we find the ALJ did not err in not giving substantial weight to Dr. Freede's later report.

■ Next Eggleston argues that the ALJ failed to credit his testimony regarding his pain. The ALJ did find the claimant's testimony to be at least partially credible. The ALJ noted that Eggleston "doubtlessly experiences some discomfort," and found that Eggleston is disabled except for light work. Furthermore, the ALJ gave reasons for finding Eggleston not fully credible. For example, he noted that Eggleston gave inconsistent answers to some questions and some of his assertions were at odds with much of the medical evidence in the case. We find no error.

Finally Eggleston argues that the ALJ did not consider the combined effects of his impairments. The ALJ's opinion addresses Eggleston's various impairments, and we find nothing to suggest they were not properly considered. The ALJ did not err.

## II.

■ In the second group of allegations of error, Eggleston challenges the ALJ's determination that, even though he cannot return to his former work, Eggleston is not disabled because he can perform other jobs that exist in the national economy. A person whose impairment precludes performance of past work is disabled unless the Secretary demonstrates that the person can perform other work. In making this determination the Secretary must consider the claimant's age, education, past work experience, and residual functional capacity. 20 C.F.R. § 404.1520(f). In appropriate circumstances, the Secretary may use the Grids to determine whether other work exists that a claimant could perform. *Heckler v. Campbell,* 461 U.S. 458, 467–69, 103 S.Ct. 1952, 1957–58, 76 L.Ed.2d 66 (1983). Where the various factors do not coincide with any specific rule or where the claimant has nonexertional impairments which further limit the range of jobs he can do, the Grids may not be used to direct a finding of not disabled. However, they may be used as a guideline in evaluating the case. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(d) and (e)(2); *see also Gatson v. Bowen,* 838 F.2d 442, 446 (10th Cir.1988).

■ Eggleston alleges that the ALJ erred in applying the Grids. He alleges that his nonexertional limitations due to pain preclude use of the Grids. The presence of a nonexertional impairment does not preclude the use of the Grids. *Channel v. Heckler,* 747 F.2d 577, 582 n. 6 (10th Cir.1984). Use of the Grids is only precluded to the extent that nonexertional impairments further limit the claimant's ability to perform work at the applicable exertional level. *Teter v. Heckler,* 775 F.2d 1104, 1105 (10th Cir.1985). In this case, the ALJ found that Eggleston could perform the full range of light work in spite of his pain. As noted above, this finding is supported by substantial evidence.

Furthermore, contrary to Eggleston's allegations, the ALJ did not rely solely on the Grids to determine that he is not disabled. The ALJ used the Grids as a guideline and also considered testimony of three vocational experts. We find that the ALJ did

not err in his use of the Grids as a guideline.

 Next Eggleston alleges that the ALJ erred in finding that Eggleston had the exertional capacity and skills to do a number of occupations. Whether the Grids are used to automatically determine disability or merely as a guideline, the ALJ must make findings concerning the relevant factors. These factors are residual functional capacity, transferable skills, age, and education. Eggleston's age is not in dispute. At the time of the ALJ's decision he was 53, which is considered approaching advanced age. Eggleston claims that the ALJ erred in finding that he has skills which can be transferred to light jobs. He claims that his physical impairments prevent him from doing even light work. His arguments essentially parallel his allegations regarding the ALJ's finding that he retains the capacity to do light work. We find that the ALJ's determination is supported by substantial evidence.

 Eggleston also claims that the ALJ erred in finding that he is functionally literate. According to the regulations, a claimant is illiterate if he "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 404.1564(b)(1). In his opinion the ALJ states:

> He is academically illiterate, but with his extensive work background as a certified welder, working on occasions from blueprint drawings, as a working foreman of a crew of as many as 321 persons, operating his self-employment welding business, and his employment as an automobile mechanic for an authorized Chevrolet and International Harvester Companies, it cannot be determined that he is functionally illiterate.

Our examination of the record reveals no evidence that Eggleston is literate. Thus the ALJ apparently relied solely on an inference derived from Eggleston's previous employment to support his conclusion that Eggleston can read and write. This inference, however, has been rebutted by direct testimony from Eggleston. He testified that he cannot read and write, except his name, and that he has never had a job where he was required to do so. When questioned about how he handled paperwork (receipts, for example) when he had his own welding business, he responded that his wife handled it. When he needed to work from blueprints, his boss gave him enough direction so that it was unnecessary for him to read the blueprints himself. He testified that other people have done his reading and writing for him in nonwork situations as well. Furthermore, on tests administered by a vocational expert, Eggleston scored at the first grade level or below in reading, spelling and math. Therefore we find that there is not substantial evidence in the record as a whole to support the ALJ's finding that Eggleston is literate.

Because the Secretary's determination is based on an unsupported finding and the applicable grid factors do not coincide with a particular rule, we must remand to the district court with direction to remand to the Secretary for an individualized determination as to whether there are jobs in the national economy that Eggleston can perform taking into account that he is illiterate.

In summary, we find that the ALJ's determination that Eggleston retains the residual functional capacity to perform light and sedentary work is supported by substantial evidence, and we therefore affirm that determination. However, the ALJ's conclusion that Eggleston is not disabled rests on a finding that he is functionally literate. This finding is not supported by substantial evidence in the record as a whole. We therefore reverse and remand to the district court with direction to remand to the Secretary for further consideration in accordance with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.