894 F.2d 1337
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas TABBERT, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-1525.
 United States Court of Appeals, Sixth Circuit.
 Feb. 2, 1990.
 
 Before WELLFORD and RALPH B. GUY, Jr., Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 In April 1987, Thomas Tabbert filed for Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. Secs. 416(i), 423. Tabbert later filed a claim for Supplemental Security Income (SSI) pursuant to section 1611 of the Act. Tabbert's SSI claim was granted by an Administrative Law Judge (ALJ) in 1988, based on a finding of disability as of April 16, 1987. The ALJ found, however, that the claimant was not disabled prior to the expiration of his insured status, September 30, 1978, and thus denied the DIB claim. Tabbert maintains that he was disabled as of June 30, 1974, at the age of 22, due to a back disorder, borderline intellectual capacity, and a depressive condition. It is clear from the record that claimant has had a serious back disorder, and that he was restricted to sedentary work on the dates in question.
 
 
 2
 On appeal, the claimant does not dispute the factual findings of the ALJ. Instead, he alleges that the ALJ erred in applying the regulations to those facts. Relevant factual findings include the following:
 
 
 3
 1. Claimant suffers from chronic low back pain for extended periods of time, and a history of lumbar instability;
 
 
 4
 2. Claimant has borderline intellectual capacity, with a full scale I.Q. of 74, and completed special education courses through the ninth grade;
 
 
 5
 3. Claimant suffers from depression;
 
 
 6
 4. Claimant's past work was semi-skilled and heavy;
 
 
 7
 5. Claimant's statements to the effect that he became unable to work on September 30, 1978, were not substantiated by the evidence;
 
 
 8
 6. Prior to September 30, 1978, claimant had the capacity to perform sedentary, unskilled work in jobs described by the vocational expert.
 
 
 9
 The grid system (Table 1, Pt. 404, Subpt. P, App. 2) directs findings of disabled or not disabled for persons whose Residual Functional Capacity (RFC) is limited to sedentary work depending on age, education, and previous work experience. The ALJ analyzed claimant as falling under rule 201.25 prior to September 30, 1978. That rule applies to a younger individual (age 18-44), with "limited or less" education, whose previous work experience was "skilled or semiskilled--skills not transferable." Such a profile leads to a finding of "not disabled" under the grid, but this finding includes a footnote to section 201.00(h) of Pt. 404, Subpt. P, App. 2, which reads:
 
 
 10
 ... [A] finding of disabled is not precluded for those individuals under age 45 who do not meet all of the criteria of a specific rule and who do not have the ability to perform a full range of sedentary work. The following examples are illustrative: ... Example 2: An illiterate 41 year old individual with mild mental retardation (IQ of 78) is restricted to unskilled sedentary work and cannot perform vocationally relevant past work, which had consisted of unskilled agricultural field work; his or her particular characteristics do not specifically meet any of the rules in Appendix 2, because this individual cannot perform the full range of work defined as sedentary. In light of the adverse factors which further narrow the range of sedentary work for which this individual is qualified, a finding of disabled is appropriate.
 
 
 11
 Pt. 404, Subpt. P, App. 2, Sec. 201.00(h).
 
 
 12
 Claimant's appeal is based solely on the argument that he fits the description in the above example "on all fours," and that a finding of disabled is therefore required by the regulations.
 
 
 13
 The Secretary maintains that claimant fails to match the example in three crucial ways--(1) he is not illiterate, (2) his previous work was not agricultural but industrial, requiring more mental focus and awareness than agricultural field work, and (3) the vocational expert identified substantial gainful activity in the national economy that could be performed by claimant.
 
 
 14
 Illiteracy is defined in the regulations as:
 
 
 15
 ... the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
 
 
 16
 20 C.F.R. Sec. 404.11564(b)(1) (emphasis added).
 
 
 17
 Although the ALJ did not make a specific finding as to claimant's degree of literacy, the psychologist who administered the Wechsler Adult Intelligence Scale-Revised (WAIS-R) test, from which claimant's I.Q. was determined, found that Tabbert's "writing is legible, and he reads well enough to fill out a simple questionnaire." A psychiatrist who examined claimant at the request of the Ohio Industrial Commission, however, found that claimant was "illiterate." The vocational expert who testified in this case concluded, based on the WAIS-R test and the testimony at the hearing, that claimant "would be considered literal [literate] ... at a very, very, minimal level." A psychologist who sought to administer the Minnesota Multiphasic Inventory (MMPI) to Tabbert was unable to do so because "Mr. Tabbert was unable to read 75% of the items." The literacy issue is, therefore, a very close question.
 
 
 18
 In Starks v. Bowen, 873 F.2d 187, 190 (8th Cir.1989), and in Glenn v. Secretary, 814 F.2d 387 (7th Cir.1987), findings by the ALJs that claimants were literate were held to be supported by substantial evidence even though the claimants could read or write only the very simplest of messages. We conclude that a finding of literacy is not required to affirm the decision by the district court.
 
 
 19
 As to the nature of claimant's past work, the ALJ noted that claimant's past work as a die setter was "heavy and of a basic or low level of semi-skilled work activity." This would seem to distinguish it from the claimant in the example in question in the regulation whose previous work was unskilled. There is substantial evidence to support the conclusion of the ALJ that plaintiff could perform sedentary work.
 
 
 20
 Finally, the government argues that the presumption of a narrowed range of work availability in the example should not apply here, where a vocational expert testified as to over 30,000 jobs that would have been available to a person in claimant's comparable position at the time in question.
 
 
 21
 Tabbert does not therefore appear to be on "all fours" with the claimant in the example. We find the government's argument in that respect to be persuasive.
 
 
 22
 Even if claimant matched the example in all respects, we would not be inclined to find that Tabbert was disabled within the meaning of the Act. Section 201.00(h) notes that a finding of disabled is "not precluded" for certain claimants who may not meet all the requirements of a listing. Claimant cites a single case in support of his position. Bouck v. Secretary, H.H.S., No. G81-874 CA, (W.D.Mich.1982) (Miles, C.J.).
 
 
 23
 Tabbert's situation is different from that in Bouck and the distinctions do make a difference. His past relevant work was semi-skilled, his illiteracy is not clear, and most important, the vocational expert testified that a wide variety of jobs existed in the economy that could be performed by Tabbert at the time. We conclude that the decision of the district court was supported by substantial evidence and should be AFFIRMED. The Secretary's finding of "not disabled prior to September 30, 1978" will not be disturbed. Richardson v. Perales, 402 U.S. 389 (1971); Garner v. Heckler, 745 F.2d 383 (6th Cir.1984).