Jack **WALSTON,** Appellant,

v.

Louis W. **SULLIVAN,** Secretary of Health and Human Services, Appellee.

No. 91–2368.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1991.

Decided Feb. 7, 1992.

John A. Bowman, Davenport, Iowa, argued, for appellant.

John Beamer, Asst. U.S. Atty., Des Moines, Iowa, argued (Frank Smith, III and Yvonne Ernzen, HHS Regional Counsel, Kansas City, Mo., on the brief), for appellee.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

HEANEY, Senior Circuit Judge.

Jack Walston appeals from the district court's grant of summary judgment to the Secretary of Health and Human Services (Secretary) in Walston's action for judicial review of the denial of his claim for social security disability insurance benefits. We reverse and remand.

## BACKGROUND

Walston, 58, left school during the eighth grade. From 1950 through 1986, he worked as a laborer for the Quad City Times, a newspaper. During that period, he held the positions of warehouseman, truck driver, photoengraving etcher, stereotyper, and plate boy.

In 1986, Walston quit his job as a warehouseman and truck driver because of heart trouble. On exertion, he experienced chest pains and shortness of breath, which were caused by a blocked heart artery. He underwent angioplasties in 1986 and 1987 to remove the obstruction. His diagnosis was arteriosclerotic coronary vascular disease and nonobstructive hypertrophic cardiomyopathy, an abnormal enlargement of the heart.

Walston lost the tips of the first two fingers on his left hand in a work accident in 1964. He also complains of pain in his lower back, right shoulder, and left knee. In his work as a warehouseman, Walston regularly moved 2,000–pound rolls of paper off a truck, using his knee to push them. X-rays of the knee show mild degenerative arthritic changes. Walston takes Feldene for arthritis and five other medications for his heart problem.

Walston also has had a profound, mixed bilateral hearing loss all his life, although it was not diagnosed until he was eleven. When his hearing loss was discovered, he transferred from a public elementary school to a school for the deaf. He wears a hearing aid, but has occasional difficulty understanding the speech of others and making himself understood.

Since his heart surgeries, Walston continues to experience angina about twice a month while walking, and takes nitroglycerin. His treating physician stated that Walston should not lift more than 40 to 50 pounds, should not work in a cold environment, should not be exposed to swings in temperature, and should not work more than 40 hours per week. Walston's job as a warehouseman and truck driver involved working both indoors and out, moving 2,000–pound rolls and pallets of paper, and transferring the paper from a warehouse to a printing plant.

Walston applied for social security disability insurance benefits on January 29, 1987, alleging disability since September 25, 1986. His claim was denied initially, on reconsideration, and by an administrative law judge (ALJ) following a hearing. On Walston's request for review, the Appeals Council vacated the hearing decision and remanded the claim to the ALJ for a determination of whether Walston was entitled to benefits under 20 C.F.R. § 404.1562. That regulation states:

If you have only a marginal education and work experience of 35 years or more during which you did arduous unskilled physical labor, and you are not working and are no longer able to do this kind of work because of a severe impairment(s), we will consider you unable to do lighter work, and therefore, disabled.

20 C.F.R. § 404.1562 (1991).

At Walston's second hearing, G. Brian Paprocki, a vocational expert, testified regarding the skill and exertion levels of Walston's previous jobs. Paprocki described Walston's work as a warehouseman from 1972 through 1986 as very heavy, unskilled labor. Paprocki classified the truck driving duties Walston performed during the same time period as very heavy and semi-skilled, but noted that the skills involved were not transferable to lighter work under the restrictions placed on Walston by his treating physician. The job of plate boy, which Walston held from 1950 to 1951, also involved unskilled, heavy labor. Paprocki described the photoengraving etcher job Walston held for six months in 1971 and 1972 as skilled, heavy work. Paprocki noted that any skills Walston may have acquired in the six months he performed that job would not transfer to other work in the national economy because of changes in printing technology since the time Walston held the job. Finally, Paprocki classified Walston's job as a stereotyper from 1952 through 1971 as heavy work as Walston performed it. Walston stated that he never mastered all the tasks involved in stereotyping, and instead did most of the heavy labor required. Paprocki testified that although a stereotyper ordinarily was a skilled position, the job is now obsolete and any skills acquired would not transfer to other work currently existing in the national economy.[1]

The ALJ determined that Walston's education was limited rather than marginal,[2]

---

1. Allen C. Vikdal, a vocational consultant hired by Walston's counsel to prepare a report on Walston's work history, agreed with virtually all aspects of Paprocki's evaluation of the skill and exertion levels of Walston's previous jobs. Vikdal also concluded that Walston had no transferable job skills.

2. The social security regulations define "limited" education as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(3) (1991). "Marginal" edu-

and that his jobs as a photoengraving etcher and stereotyper were semiskilled or skilled rather than unskilled. Accordingly, the ALJ found Walston not disabled under section 404.1562. The ALJ further found that Walston could not return to his past work, and that the exertional and nonexertional restrictions imposed by Walston's treating physician limited Walston's residual functional capacity to less than the full range of medium work. Relying on vocational expert testimony taken at Walston's first hearing, the ALJ found that Walston could perform the jobs of production assembler, hand packager, commercial cleaner, and bottling line attendant, and that these jobs existed in substantial numbers in the national and regional economies. Accordingly, the ALJ concluded that Walston was not disabled within the meaning of the Social Security Act.

The Appeals Council denied review, making the ALJ's decision the final decision of the Secretary. Walston then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). The district court affirmed the Secretary's decision and Walston appeals.

## DISCUSSION

Walston claims that substantial evidence in the record as a whole fails to support the ALJ's finding that he is not disabled under section 404.1562 of the social security regulations.

To be considered disabled under section 404.1562, a claimant must: 1) have only a marginal education; 2) have at least thirty-five years of work experience performing arduous, unskilled physical labor; and 3) be unable due to a severe impairment to return to such labor. 20 C.F.R. § 404.1562 (1991). The ALJ found, and the record amply supports, that Walston suffers from a severe impairment which precludes his return to his previous or similar work. Walston claims that the ALJ erred in deter-

mining that his education was limited rather than marginal, and in concluding that his past performance of some skilled or semiskilled work precluded a finding of disability under section 404.1562. We agree.

### I. Marginal Education

■ The social security regulations define marginal education as "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs," and generally consider formal education of six grades or less to be marginal. 20 C.F.R. § 404.1564(b)(2) (1991). The ALJ concluded that because Walston attended eight grades of formal schooling, his education was limited rather than marginal. See id., § 404.1564(b)(3) (noting that seven to eleven grades of formal schooling generally constitutes limited education).

■ The regulations recognize, however, that the grade level completed in school may not represent a claimant's actual educational abilities. See id., § 404.1564(b). A claimant's formal education is conclusive proof of his educational abilities under the regulations only if no other evidence is presented to contradict it. See id.

The record contains substantial evidence which contradicts the ALJ's finding that Walston's education was limited rather than marginal. While Walston attended a total of eight grades of school, only five of them were completed at a traditional elementary school. When Walston's hearing loss was discovered at the age of eleven, he transferred to the ungraded Davenport Oral Deaf School. At age sixteen, he dropped out of the eighth grade because he was older than the other students and believed he should be working.

Intelligence tests administered to Walston in February 1988 by Jo Ann C. Milani, a psychologist, indicated that although

---

cation is defined as "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." Id., § 404.-1564(b)(2). Although the regulation recognizes that the numerical grade level attained in school may over- or under-represent a claimant's actual

educational abilities, formal schooling through the sixth-grade level or less is generally considered a marginal education, while schooling from the seventh to eleventh-grade level is generally considered limited. See id.

Walston's math skills were at the eighth-grade level, his reading and spelling skills were at or below the third-grade level. Similarly, although Walston achieved a full-scale IQ score of 92, his score on the vocabulary subtest, which Milani described as "the only true test of real intelligence," placed him in the mentally retarded range. Milani concluded that Walston had a developmental disorder involving his reading, writing, and expressive language skills, possibly related to his fifty-percent hearing loss.

Walston testified that he had trouble recognizing, spelling, and pronouncing words. He stated that he frequently had to call his wife from his job at the warehouse to ask how to spell words required for recording the quantities of paper he worked with each day. He stated that his wife managed their checking account and that he could not write a check by himself, but that he could add, subtract, and divide.

The foregoing evidence indicates that the grade level Walston attained in school does not accurately represent his skill level. While his math skills are commensurate with an eighth-grade education, he reads at or below the third-grade level and needs help filling in a check and spelling simple words. Substantial evidence therefore does not support the ALJ's conclusion that Walston has more than a marginal education.

## II. Arduous, Unskilled Physical Labor

The ALJ concluded that because two of Walston's previous jobs, stereotyper and photoengraving etcher, are classified as skilled, Walston could not meet the regulation's requirement of at least thirty-five years of arduous, unskilled physical labor. A literal reading of section 404.1562 supports this conclusion. A Social Security Ruling issued to clarify that section, however, states that semi-skilled or skilled work which does not result in the acquisition of skills transferable to lighter work does not preclude a finding of disability under section 404.1562. The ruling states:

Isolated, brief, or remote periods of experience in semiskilled or skilled work, however, would not preclude the applicability of these regulations when such experience did not result in skills which enhance the person's present ability to do lighter work. Also, periods of semi-skilled or skilled work may come within the provisions of these regulations if it is clear that the skill acquired is not readily transferable to lighter work and makes no meaningful contribution to the person's ability to do any work within his or her present functional capacity.

S.S.R. 82–63, at 205 (Cum.Ed.1982).

The first sentence of the quoted paragraph applies to the two jobs Walston held which are ordinarily classified as skilled. Walston worked as a photoengraving etcher for six months in 1971 and 1972. His experience in that job thus was both brief and remote. According to vocational expert testimony, any skills he acquired in that position are now obsolete and not transferable to other work.

Similarly, because Walston worked as a stereotyper from 1952 through 1971, more than twenty years have elapsed since Walston held that position. Although stereotyping ordinarily involves skilled work, Walston stated that he never mastered many of the skills involved. In any event, both vocational experts agreed that stereotyping is now an obsolete printing process, and that any skills acquired would not be transferable to work presently existing in the national economy. Thus, Walston's experience in photoengraving and stereotyping did not result in skills which enhance his present ability to do lighter work.

The Social Security Ruling quoted above also notes that section 404.1562 may apply to periods of semi-skilled or skilled work "if it is clear that the skill acquired is not readily transferable to lighter work and makes no meaningful contribution to the person's ability to do any work within his or her present functional capacity." Walston did very heavy, semi-skilled work as a truck driver from 1972 through 1986, a position from which he acquired the skills necessary to operate a heavy truck. Walston's residual functional capacity as described by the ALJ, however, precludes

lifting or carrying more than forty to fifty pounds and exposure to extreme cold or swings in temperature between hot and cold.

The Secretary's vocational expert testified at Walston's first hearing that the work Walston performed as a truck driver involved a level of exertion that Walston was no longer capable of performing. He also noted that such work, as performed in the region, necessarily involved exposure to extremes of temperature and swings in temperature between hot and cold. The vocational expert concluded that Walston's skills as a truck driver were not transferable to any work within Walston's present residual functional capacity.

The record thus indicates that the skilled and semi-skilled work Walston performed resulted in no skills which are transferable either to work presently existing in the national economy or to work within Walston's present residual functional capacity. The ALJ therefore erred in concluding that Walston's previous periods of skilled work precluded a finding of disability under section 404.1562.[3]

## CONCLUSION

Substantial evidence in the record as a whole indicates that Walston has only a marginal education and thirty-six years of work experience doing arduous, primarily unskilled, physical labor. Because of a severe impairment, Walston cannot return to his previous or similar work. Although his past experience included the performance of some skilled or semi-skilled work, any skills he acquired through such work are either obsolete or not transferable to other jobs within his present residual functional capacity. Walston therefore meets the requirements for a finding of disability under 20 C.F.R. § 404.1562. Accordingly, we re-

verse the decision of the district court and remand this case with directions to the Secretary to award benefits to Walston as of September 25, 1986.

---

**3.** Because the ALJ concluded that Walston's education and past skilled work precluded application of section 404.1562, he did not address the regulation's requirement that the claimant have at least thirty-five years of experience involving arduous physical labor. Social Security Ruling 82–63 describes arduous work as "primarily physical work requiring a high level of strength or endurance." S.S.R. 82–63, at 205 (Cum.Ed.

1982). The Secretary's vocational expert classified all of Walston's jobs at the Quad City Times as heavy or very heavy as Walston performed them. Each job required frequent moving or lifting of weights from 60 to 2,000 pounds. We thus believe that Walston's thirty-six years of work at the Quad City Times qualifies as arduous physical labor within the meaning of the regulation.