991 F.Supp. 1101 (1997)
Byron C. KING, Plaintiff,
v.
Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.
No. 1:96 CV 114 DDN.
United States District Court, E.D. Missouri, Southeastern Division.
October 15, 1997.
*1102 *1103 Therese A. Schellhammer, Little and Schellhammer, Poplar Bluff, MO, for Plaintiff.
Wesley D. Wedemeyer, Office of U.S. Attorney, St. Louis, MO, for Defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This cause is before the Court upon the parties' cross motions for summary judgment under Federal Rule of Civil Procedure 56. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. 28 U.S.C. § 636(c)(3).
Plaintiff Byron C. King made two applications under the Social Security Act on January 31, 1994. The first is an application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 et seq.[2] (Tr. 108-10). The second is an application for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. (Tr. 78-79).
The applications were denied initially and on reconsideration. (Tr. 68-77, 83-97). On March 26, 1995, following a hearing, an administrative law judge (ALJ) denied the claims. (Tr. 17-27). The Appeals Council denied review and the decision of the ALJ became the final decision of the defendant Commissioner of Social Security.
Plaintiff has alleged that he became disabled on July 1, 1993, due to illiteracy and left knee pain. (Tr. 78, 108, 124). The record shows he was born on July 25, 1943 (thus 51 years old, or "closely approaching advanced age" at the time of the decision), is insured for disability benefits through 1998, and has not engaged in substantial gainful activity since the date of his alleged disability. (Tr. 25, 78, 108).
To establish entitlement to benefits on account of disability, in the prescribed five-step analysis, see 20 C.F.R. § 404.1520, § 416.920, plaintiff must first prove that one or more medically determinable impairments prevent him from performing his past relevant work.[3]See Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir.1993). If shown, the burden shifts to the Commissioner to prove that plaintiff has the residual functional capacity to perform other substantial gainful activity (SGA) in the national. economy. Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994).
The ALJ concluded that plaintiff could not perform his past relevant work as a janitor, home care aide, school bus driver and moving company laborer, and that the burden of proof shifted to the Commissioner. (Tr. 24, 26). By definition this means that plaintiff was found to have a "severe impairment." See 20 C.F.R. § 404.1520(e), (f). At the hearing, the ALJ took testimony from a Vocational Expert regarding plaintiff's residual functional capacity. (Tr. 53-60).
The ALJ additionally found that: plaintiff has chronic pain in his left knee and borderline intellectual functioning, but does not have an impairment or combination of impairments listed in or equal to those in "Appendix 1, Subpart P, Regulations No. 4,"; he *1104 cannot lift more than twenty pounds; he completed five years of schooling; he has no acquired work skills transferable to skilled or semi-skilled labor; his allegations of symptoms precluding "light work" are not credible, based on inconsistencies in the record; his residual functional capacity for the full range of "light work" is reduced by his inability to work in vans or pickup trucks and his inability to receive written instructions; under the regulations, including 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.10, he is not disabled; there are a significant number of jobs in the national economy he can perform; and he was not disabled at any time through March 26, 1995 (date of decision). (Tr. 26-27).
The Commissioner's decision is conclusive upon this Court if it is supported by relevant evidence a reasonable person might accept as adequate to support the decision, i.e., "substantial evidence." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In reviewing the record for substantial evidence, the Court may not make its own findings of fact by reweighing the evidence and substituting its own judgment for that of the Commissioner. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir.1987). However, the determination "is more than a search for the existence of substantial evidence supporting the Commissioner's decision," as "the evidence must take into account whatever in the record fairly detracts from its weight." Piercy v. Bowen, 835 F.2d 190, 191 (8th Cir.1987) (internal citations omitted). A reviewing court should affirm a decision that is supported by substantial evidence. Baker v. Secretary of HHS, 955 F.2d 552, 554 (8th Cir.1992).
Plaintiff argues that the ALJ: 1) ignored evidence of plaintiff's illiteracy; 2) wrongly concluded that his mental impairments were not severe enough to warrant a finding of disability, contrary to medical evidence; and 3) erroneously relied on the Vocational Expert's testimony because it was based on an incomplete hypothetical question which did not include plaintiff's mental impairments.

Discussion of the ALJ's Decision.

1. Illiteracy.
The determination of literacy vel non is dispositive under the facts in this record. However, the ALJ did not directly address literacy in his finding. He has, moreover, made inconsistent findings regarding literacy evidence without explanation. Therefore, it is necessary to remand this case to the Commissioner for further examination and expansion of the record.
Rules 202.09 and 202.10 of 20 C.F.R. Pt. 404, Subpt. P, App. 2, both refer to individuals of plaintiff's age, limitation to "light" work, and unskilled work experience. If the individual is "illiterate" he is classified under 202.09 as disabled, and if he is "at least literate" he is classified under 202.10 as not disabled. The ALJ referred to Rule 202.10 in Finding No. 11, along with plaintiff's "education," to conclude that he was not disabled. (Tr. 26). The regulations define illiteracy as "the inability to read or write," a person is considered illiterate if he or she "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1).
Plaintiff testified that he dropped out of school in the 6th grade (Tr. 38) and the ALJ found that he had 5 years of education (Tr. 26). This would qualify as "marginal education."[4]
20 C.F.R. § 404.1564(b) states in pertinent part,
Formal education that you completed many years before your impairment began, ... may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities.... However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities.
*1105 Plaintiff based his disability claim, in part, on his illiteracy. (Tr. 124). The application form indicates he needs assistance with his claim because he cannot read or write. (Tr. 131). In March 1994, he told Dr. Thomas Carter that he dropped out of school because he could not learn to read. (Tr. 139). Dr. Carter estimated his reading level at 4th to 5th grade level, but said that his spelling was so bad that he could not write a letter. (Id.). He also told Dr. Carter that he was fired from one job because of his inability to read measurements and quit another because he was required to learn to read patient charts. Dr. Carter found him to have significant cognitive impairments. (Tr. 141). Plaintiff testified that he knew only "little words," that he could write "a few" of them, and that he could not fill out a job application. (Tr. 50, 52). Therefore, there is at least some "evidence to contradict" the presumption of language skills high enough to be associated with marginal education; accordingly, it is not appropriate to base plaintiff's education entirely on his grade level, as the ALJ apparently did. Smith v. Shalala, 46 F.3d 45, 46 (8th Cir.1995); Walston v. Sullivan, 956 F.2d 768, 771-72 (8th Cir.1992).[5]
The ALJ did not discuss the incongruence between plaintiff's allegations of illiteracy and the administrative finding of literacy. He acknowledges that plaintiff's application for benefits is based on "left knee problem and inability to read and write." (Tr. 20). He reports that plaintiff testified that "he reads and writes very little. He recognized labels on canned food. He can read a newspaper article well enough to know what the subject of the article [is]." (Tr. 21).[6] He provides his rationale for discrediting plaintiff's complaints of disabling pain and casts suspicion on plaintiff's motivation to work, but makes no further determination as to the literacy question. He does, however, reiterate the hypothetical question he posed to the Vocational Expert, limiting plaintiff to jobs that do not require written instructions. (Tr. 25). The hypothetical included the condition that "... because of [his] inability to read and write, any instructions given the man on his job work, must be oral instruction as opposed to written instructions." (Tr. 57) (emphasis added). Indeed, defendant argues, somewhat paradoxically, that by including plaintiff's illiteracy claim in the hypothetical, the ALJ explicitly found it to be a "credible" impairment. (Def. Mot. at 10, Doc. No. 18). Yet in his subsequent findings, the ALJ stated that Rule 202.10 applies (plaintiff is "at least literate") and, thereby was not disabled. (Tr. 26).
Defendant argues that a finding of literacy is warranted in any event under the holding of Starks v. Bowen, 873 F.2d 187, 190 (8th Cir.1989), finding literacy where "the claimant is able to read and write only very simple messages." (Def. Mot. at 7, Doc. No. 18). Starks does not dispose of this issue for two reasons. First, the record is unclear as to the ALJ's findings of fact. He refers to Rule 202.10, but makes no specific reference to plaintiff's claims of illiteracy; and he does specifically refer to plaintiff as being unable to read and write, in the hypothetical. Second, the court in Starks found the determination to be quite fact-specific and the result of cumulative elements, (see Starks, 873 F.2d at 189-90), and the facts of the case at bar are somewhat different. In contrast to the plaintiff in Starks, this plaintiff has about half as many years of schooling, and there is no evidence directly contrary to his testimony.[7] *1106 Furthermore, there is no evidence of plaintiff's ability to write a simple message; and as the court in Starks pointed out, the inability to write a simple message has constituted grounds for a finding of illiteracy, even where the plaintiff could read in a very limited way. Starks, 873 F.2d at 189, 190 (citing Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir.1987)) ("There is simply no indication that [plaintiff] could `write a simple message such as instructions or inventory lists,' a prerequisite [for a finding of literacy] under the regulations").
ALJ findings of literacy have been upheld in this Circuit where a claimant testified to some formal education with additional evidence that the claimant: could read "to a certain extent" if it wasn't "too complicated" (Shelton v. Chater, 87 F.3d 992, 994 (8th Cir.1996)); could read for an hour each day (Loving v. Dept. of Health and Human Services, Secretary, 16 F.3d 967, 971 (8th Cir. 1994)); could read "some" but not a "lot" of words (Starks, 873 F.2d at 189-90 (8th Cir. 1989)); could follow diagrams and measurements "quite well" and "make things out" by "picking through words" (Hagan v. Schweiker, 717 F.2d 1229, 1230 (8th Cir. 1983)). In the case at bar, the record simply does not provide enough evidence to allow the Court to determine on what basis the ALJ discredited plaintiff's claims, and whether substantial evidence supports the finding. Arguments can be made that this case is distinguishable from the foregoing cases. It is up to the ALJ to examine and weigh such arguments; he must, however, explain how he arrived at his decision and must base it on substantial evidence in the record as a whole. Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir.1987) Thus, it remains to be determined whether the finding of plaintiff's literacy is properly supported.

2. The mental impairments and disabling pain.
The ALJ found that plaintiff does have a "severe impairment," but not severe enough to qualify as disabling since he can perform a limited range of light work. (Tr. 20, 26). Regarding the allegations of pain, he found that plaintiff had been examined by physicians who variously diagnosed acute ligamental injuries and chronic pain in the left knee, and that one doctor believed plaintiff would be aided with knee surgery. (Tr. 22). He noted that plaintiff testified that he sought no medical treatment or therapy for his knee injury, other than self-initiated ice treatment, and took no medication stronger than nonprescription aspirin or Tylenol ("[I]f I can get a hold of them," Tr. 47). He further noted plaintiff's testimony of a need to use a cane sometimes (though, he remarked, not on physician's orders), and testimony of plaintiff's pain and difficulty walking more than a block, or on stairs, standing more than two hours, or sitting for more than one hour. He found that plaintiff's demeanor at the evidentiary hearing did not indicate disabling pain since he did not stand or request a recess. (Tr. 23). He found that the allegation of debilitating pain was not credible based on plaintiff's lack of medical treatment and medication, the objective medical findings, plaintiff's activities, and his appearance and demeanor. (Tr. 24).
As to the allegations of mental impairments, the ALJ found that plaintiff's IQ was 83, or borderline intelligence. He found there were indications plaintiff suffered from dysthymia and depression, but that this has not required hospitalization and has not interfered significantly with his daily activities nor caused anything more than a slight impairment in his concentration, persistence or pace; therefore he found it not disabling. (Tr. 24).
The VE testified that if plaintiff's allegations of pain and mental impairments were credible, there were no jobs he could perform. (Tr. 56). Plaintiff testified that he had no income at all and no medical insurance. (Tr. 52).
*1107 Dr. Carter's report indicated plaintiff began to cry when asked about suicidal thoughts, and admitted to them. This also happened in the February 1995 examination by Dr. John Wood. Both reports indicated evidence of depression and significant cognitive defects. (Tr. 141, 168). Dr. Wood indicated that Dr. Carter recommended further examination of possible depression and memory dysfunction; Dr. Wood reported that plaintiff may be suffering from "severe" depression and strongly advised psychiatric intervention, including antidepressant medication. (Tr. 169).
Plaintiff reported on his "Daily Activities Questionnaire" that he is bothered with insomnia; is sometimes not motivated to groom himself; gets so mad at people he "explodes" and quits work; finds it hard to get along with others; is very forgetful; and cannot concentrate well. (Tr. 134-37). He also testified that the pain in his leg "runs all the way up to my brain and hurts my head, and gives me a headache and makes me nervous;" and that "it seems like it [sic] always in my head the pain." (Tr. 49, 53).
Plaintiff has presented evidence of a mental impairment which may be severe and which may impair his concentration and may cause him to deteriorate in work-like settings. The ALJ agreed that there was such evidence, though he decided it was not persuasive. Under 20 C.F.R. § 404.1520a(a), when adult claimants allege such a mental impairment, "a special procedure must be followed" by the Commissioner. This procedure is the use of the Psychiatric Review Technique Form (PRTF) and the ALJ must append it to his decision. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). See Pratt v. Sullivan, 956 F.2d 830, 834 (8th Cir.1992) (per curiam). The ALJ did not follow this special procedure, and did not append a PRTF to his decision.
Failure to complete the PRTF alone has been held to require reversal and remand. See Stambaugh v. Sullivan, 929 F.2d 292, 296 (7th Cir.1991); Hill v. Sullivan, 924 F.2d 972, 975 (10th Cir.1991) (per curiam). This Circuit has suggested that such a failure requires reversal and remand. See Montgomery v. Shalala, 30 F.3d 98, 99, 100 (8th Cir.1994); Pratt, 956 F.2d at 834, 834 n. 8.
Under the circumstances, the undersigned concludes that it is not harmless error to have failed to complete a PRTF. Cf. Fountain v. Railroad Retirement Board, 81 F.3d 784, 788 (8th Cir.1996). Plaintiff provided substantial evidence of mental impairments, and while it is up to the ALJ to determine whether or not these impairments are disabling, he must follow the appropriate method of review.
This also affects the analysis of plaintiff's allegations of disabling pain. A claimant's failure to pursue medical treatment for pain, and use of medication no stronger than non-prescription pain relievers, is inconsistent with complaints of disabling pain, tending to indicate it is tolerable. Kisling v. Chater, 105 F.3d 1255, 1257-58 (8th Cir.1997); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir.1993). This may be mitigated by a claim of insufficient funds with which to purchase necessary medicine or treatment, or by psychiatric factors. "[L]ack of financial resources may in some cases justify the failure to seek medical attention." Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir.1987). "[T]he question is whether [the impairment] is reasonably remediable by the particular individual involved, given his or her social and psychological situation." Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir.1984).
"A Social Security claimant should not be disfavored because he cannot afford or is not accustomed to seeking medical care on a regular basis. The failure to seek medical attention may, however, be considered by the administrative law judge in determining the claimant's credibility." Basinger v. Heckler, 725 F.2d 1166, 1170 (8th Cir.1984); cf. Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir.1995) (failure to seek regular medical treatment for back pain and depression a legitimate factor in rejecting subjective complaints).
Plaintiff has made claims as to his destitute condition; and though he did not testify that this was why he did not seek further medical attention for his pain, he was never asked. Moreover, there exists some evidence *1108 of mental impairments not fully examined by the ALJ. "On remand, we advise the ALJ to consider the aggravating factor posed by the possibility that [plaintiff's] perception of pain is exacerbated by his psychological impairment." Delrosa v. Sullivan, 922 F.2d 480, 485-86 (8th Cir.1991) (citing SSA Rule 82-58: "when alleged symptom-related limitations are clearly out of proportion to physical findings ... the possibility of a severe mental impairment should be investigated") (alteration in original) (other internal citations omitted).
The ALJ found plaintiff's allegations of pain incredible, stating that this finding was not based solely on a lack of objective medical evidence nor his personal observations. (Tr. 24). While that properly recites the limitations on an ALJ's finding (20 C.F.R. § 404.1529(c)(2); Bishop v. Sullivan, 900 F.2d 1259 (8th Cir.1990)), the ALJ does appear to have given substantial weight to plaintiff's demeanor at the hearing ("He did not seem to be distracted by pain. Although offered the option to stand during the hearing or request a recess, [he] did not avail himself of this opportunity"). (Tr. 23, 25). The ALJ specifically noted that plaintiff testified that his leg became painful after one hour. (Tr. 21). The record indicates that the hearing lasted from 1:05 p.m. until 1:50 p.m. (Tr. 35, 61), or 45 minutes, less time than that in which plaintiff alleges he must stand up. This is not a proper basis for a lack of credibility finding and approaches the "sit and squirm" test strictly prohibited by this Circuit. See Reinhart v. Secretary of HHS, 733 F.2d 571, 573 (8th Cir.1984); see also Cline v. Sullivan, 939 F.2d 560, 567-68 (8th Cir.1991); Bishop v. Sullivan, 900 F.2d 1259, 1263 (8th Cir.1990).
The ALJ further discredits plaintiff by a finding that he has "no long steady work record" and that his "earnings were generally very low." (Tr. 23). The ALJ made no effort, however, to determine why plaintiff's earnings were so low. Salts v. Sullivan, 958 F.2d 840, 845 (8th Cir.1992). "[Plaintiff's] history of low earnings could be interpreted as evidence that he was never able to perform substantial gainful activity over a period of time, or as evidence that he simply never wanted to work. The ALJ did not develop the record to a point where one can say that either of these possibilities is more likely than the other." (Id. at n. 7). Without further analysis, this observation does not constitute substantial evidence in support of the ALJ's determination that plaintiff's complaints were incredible. (Id. at 845). See also Miller v. Sullivan, 953 F.2d 417, 422 (8th Cir .1992).
The ALJ also went to some lengths to cast aspersions on plaintiff's motivation for applying for SSA benefits. He stated that "[a]n award of benefits would be more than competitive with what he earned when he was working. In addition, it would most likely be tax free, he would receive medical benefits and would be relieved of work-related expenses and the rigors of working." (Tr. 24). Defendant asserts that this Circuit has held a claimant's subjective complaints may be discounted where he appears motivated to qualify for disability benefits. (Def. Mem. at 9, Doc. No. 18). This argument is essentially correct, but inapposite. There is no evidence here that plaintiff has engaged in chicanery, that he displayed strong elements of secondary gain, or that he is anything but a particularly destitute claimant. A claimant should not be viewed with suspicion because he has filed a claim.
The ALJ may reject plaintiff's complaints of disabling pain only upon showing their inconsistency with evidence in the record as a whole. See Sullins v. Shalala, 25 F.3d 601, 603 (8th Cir.1994), cert. denied, 513 U.S. 1076, 115 S.Ct. 722, 130 L.Ed.2d 627 (1995); Polaski v. Heckler, 751 F.2d 943, 948-50 (8th Cir.1984) (Polaski I).
Defendant points out that there are inconsistencies in the record, including a report of plaintiff's having sought work during the period of alleged disability (Def. Mot. at 11, Doc. No. 18), thus indicating that plaintiff believed that he was not disabled. The alleged inconsistency was a statement that he rides with his brother (presumably related to testimony of helping his brother on a coffee route and an insurance sales route as a kind of repayment for his brother feeding him and paying his bills) and periodically checks *1109 around for job openings. Defendant relies on Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir.1995), to support the argument that this is a discrediting inconsistency. However, the parenthetical admonition immediately following the relevant portion of that case is significant: "[T]his record of contemplating work indicates that Bentley did not view his pain as disabling.... (Bentley's case must of course be distinguished from situations where the medical evidence uniformly supports a finding of disability; in such cases an unsuccessful work search may even reinforce a disability claim)." Id. (internal citations omitted). In the case at bar, without complete medical  here, psychiatric  evidence, neither the Court nor the ALJ can determine which way this alleged inconsistency is to be interpreted. It is a question of fact, not considered by the ALJ, which may create either favorable inferences about plaintiff's motivation to work, or unfavorable ones about his credibility. Without an explicit analysis, the Court cannot determine whether the decision is adequately based.
Therefore, because the ALJ did not clearly address plaintiff's illiteracy claim, and because he did not fully and fairly develop the record as to plaintiff's mental impairments claim and did not complete a Psychiatric Review Technique Form, and because he did not properly evaluate plaintiff's credibility, this cause will be remanded to the Commissioner for further consideration of the evidence and expansion of the record. This should include a complete psychiatric evaluation of the plaintiff.
For these reasons, the Court will sustain the motion of plaintiff for summary judgment in that the action will be remanded to the Commissioner for further proceedings under Sentence 4 of 42 U.S.C. § 405(g). The motion of the defendant for summary judgment is denied.
NOTES
[1] Effective September 29, 1997, Kenneth S. Apfel became the Commissioner of Social Security and is substituted for Shirley S. Chater as defendant in this action. Fed.R.Civ.P. 25(d)(1).
[2] The record indicates plaintiff previously filed applications under Titles II and XVI which were denied in September 1992 (Tr. 62-67), and were not pursued. The ALJ has not reopened these findings and plaintiff has not challenged them. Therefore, a finding of disability prior to that date is precluded as res judicata. See Brown v. Sullivan, 932 F.2d 1243, 1246 (8th Cir.1991).
[3] Under the Act, plaintiff must prove that he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment which would either result in death or which had lasted or could be expected to last for a continuous period of at least twelve months. See 42 U.S.C. § 423(d); § 1382c(a)(3)(A). For Title II, he must prove his condition was disabling prior to the expiration of his insured status; for Title XVI, he must prove he was disabled during the pendency of his application.
[4] "Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education." 20 C.F.R. § 404.1564(b)(2).
[5] In addition, plaintiff indicates in his application that he left school in 1958, more than 35 years ago. (Tr. 128). The language of § 404.1564(b) suggests that such a long period of time further limits the propriety of using the grade level alone as presumptive evidence of plaintiff's educational level. Also, plaintiff reported failing at least one grade and possibly being in special education classes in school (Tr. 167); attaining only the 6th grade by the age of 15 years is itself indicative of education problems not customarily reflected in that grade level.
[6] This is not entirely clear. What plaintiff said was, "I sometimes pick up a newspaper and try to read it. I can read some of the, some of the newspaper. Enough to try to make out what the story is about...." (Tr. 51) (emphasis added). Which is not to say that he can read it "well enough to know what the subject" actually is. Defendant characterizes this testimony as proving plaintiff can "understand the article" (Def. Mot. at 7, Doc. No. 18), clearly an overstatement.
[7] Contrary evidence in Starks included a report which recorded plaintiff stating he actually could read and write but had difficulty with big words. There was also a report from an interviewer stating that the plaintiff exhibited no signs of having difficulty reading and writing. See Starks at 190; see also Welchance v. Bowen, 731 F.Supp. 806, 820 (M.D.Tenn.1989) (criticizing Starks' reliance on the apparently erroneous standard for literacy expressed in Glenn v. Secretary of HHS, 814 F.2d 387, 390-91 (7th Cir. 1987)).