**Charles D. HAYES, Plaintiff,**

v.

**John J. CALLAHAN,[1] Acting Commissioner of Social Security, Defendant.**

**Civil Action No. 96–2328–GTV.**

United States District Court, D. Kansas.

Aug. 8, 1997.

---

1. John J. Callahan was appointed as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater. Therefore, pursuant to Rule 25(d)(1) of the Fed. R. of Civ. P., John J. Callahan should be substituted for Shirley S. Chater, as the defendant in this suit.

Luis Mata, Evans & Mullinix, P.A., Kansas City, KS, for Plaintiff.

Janice M. Karlin, Office of U.S. Atty., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This action is brought pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Social Security Commissioner denying plaintiff's claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq. (the "Act"). Plaintiff has filed a motion for summary reversal of the Commissioner's decision (Doc. 7)[2] that seeks an order reversing the Commissioner's decision. Defendant has filed a brief in opposition to plaintiff's motion (Doc. 9). For the reasons set forth below, the decision of the Commissioner is affirmed.

### I. Procedural Background

Plaintiff filed an application for disability benefits under Title II of the Act. The application was denied initially and on reconsideration.

On March 7, 1995, an administrative hearing at which plaintiff and his counsel were

---

2. The Tenth Circuit, in *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579 n. 29 (10th Cir.1994), disapproved of the motion practice followed in this district pursuant to D. Kan. Rule 503. D. Kan. Rule 83.7 revised D. Kan. Rule 503 to comply with the ruling in *Olenhouse*. For purposes of the present appeal, the court attaches no legal significance to the title that appears on the motion and instead will, as it has always done, follow the well-established standard of review for Social Security appeals and will rely only on the evidence found within the administrative record.

present was held before an administrative law judge ("ALJ"). On June 2, 1995, the ALJ rendered a decision in which he determined that plaintiff was not under a "disability" as defined by the Act. The Appeals Council denied plaintiff's request for review of the ALJ's decision. Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II. Standard of Review

■■■■ The Commissioner's conclusions are binding on this court if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Dixon v. Heckler,* 811 F.2d 506, 508 (10th Cir.1987). The court's review is limited to determining "whether the record as a whole contains substantial evidence to support the Secretary's decision and whether the Secretary applied the proper legal standards." *Castellano v. Secretary of Health and Human Servs.,* 26 F.3d 1027, 1028 (10th Cir.1994). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

## III. Summary of Facts

Plaintiff was born July 27, 1947. He alleges that he has been disabled since suffering a closed-head injury during a basketball game on May 5, 1991. Plaintiff's last gainful employment was as a maintenance manager at a waste water facility. Plaintiff claims that because of his injury, he has been unable to return to work.[3]

Plaintiff asserts that as a result of the injury, he continues to suffer dizziness, vertigo, short-term memory loss, lack of concentration, and disabling stress. Plaintiff claims that those long-term effects of the injury make him permanently disabled. Additional facts are discussed as necessary.

## IV. Analysis

To qualify for disability benefits, a claimant must establish the existence of a severe physical or mental impairment, expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The Commissioner has developed a five-step sequential evaluation process for determining disability. *See* 20 C.F.R. §§ 404.1520(a)-(f) and 416.920; *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988). If at any step in the process the Commissioner determines that the claimant is disabled or is not disabled, the evaluation ends. *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992) (citations omitted).

In applying the five-step evaluation, the ALJ found that plaintiff was not disabled. The ALJ determined that plaintiff was not currently engaged in substantial gainful employment (step one), that he has a severe impairment (step two), and that even though he is not conclusively disabled by the nature of his impairment (step three), he cannot return to his past relevant work (step four). Finally, the ALJ determined at step five that plaintiff had the residual functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Bowen v. Yuckert,* 482 U.S. 137, 143, 107 S.Ct. 2287, 2292, 96 L.Ed.2d 119 (1987).

■■■■ Plaintiff appeals the ALJ's determination at step three that he is not conclusively disabled by the nature of his impairment. For an ALJ to find that an impairment conclusively disables a claimant, the impairment must be "equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Williams,* 844 F.2d at 751, citing (20 C.F.R. §§ 404.1520(d), 416.920(d)(1997) ). "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." *Id.* at 751.

The ALJ determined plaintiff was not conclusively disabled because he did not satisfy

---

3. Plaintiff did return to work for a few days in July 1991, but was unable to continue. Although plaintiff claims he was discharged solely for med-ical reasons, poor work evaluations also may have contributed to his discharge.

the criteria for the listed impairment of an organic mental disorder. To establish that he has an organic mental disorder, plaintiff must demonstrate: (1) a loss of specific cognitive abilities, and (2) that the loss of those abilities cause a significant impairment to everyday functioning. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.02 (1997).

Although the ALJ found plaintiff suffered a loss of specific cognitive abilities, he found that plaintiff did not have a significant impairment to everyday functioning. To demonstrate a significant impairment to everyday functioning, plaintiff must show at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)

20 C.F.R., Part 404, Subpt. P, App.1, § 12.02(b) (1997).

Plaintiff contends that substantial evidence does not support the ALJ's finding that plaintiff did not demonstrate significant impairment to everyday functioning. Specifically, plaintiff argues that (1) based upon his testimony, his wife's testimony, and the medical record, he satisfied the requisite criteria for an organic mental disorder, and (2) the ALJ did not accord proper weight to the opinion of his treating physician.

## A. Record Evidence

 Plaintiff first asserts, based upon the medical evidence, his testimony, and his wife's testimony, that his limitations satisfy the criteria for an organic mental disorder. The determination of whether a plaintiff's ailments satisfy the criteria of a listed impairment must be based solely on medical evidence. *See* 20 C.F.R. §§ 404.1526(b), 416.926(b); *Larson v. Chater,* 103 F.3d 144 (10th Cir. 1996). "Moreover, the step three analysis requires a comparison of medical evidence regarding symptoms, signs, and laboratory findings with the listed impairment sought to be established or the listed impairment most similar to the claimants." *Id.* (citing 20 C.F.R. §§ 404.1526(a), 416.926(a)). Because the testimony of plaintiff and his wife is not relevant to a step-three analysis, the court will consider only whether substantial medical evidence supports the ALJ's determination.

The ALJ, following an extensive review of the medical record, determined that plaintiff had slight restrictions on daily living, slight difficulties maintaining social functioning, rare deficiencies in concentration, and no episodes of deterioration. Therefore, the ALJ concluded that plaintiff was not conclusively disabled.

The medical record supports this finding. Mark Petersen, M.D., was the only physician who indicated plaintiff suffered from complete disability and, as discussed below, the ALJ legitimately found that the medical reports of other physicians outweighed Dr. Petersen's opinion. The court finds there is substantial evidence to support the ALJ's determination.

## B. Treating Physician

 Plaintiff next asserts that the ALJ did not give proper weight to the opinion of Dr. Petersen, his treating physician, in determining that he was not conclusively disabled. In the Tenth Circuit, the ALJ must give substantial weight to the opinion of the claimant's treating physician, unless good cause is shown to the contrary. *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir.1987); *Murphy v. Callahan,* No. 96–4084–SAC, 1997 WL 263739, at *4 (D.Kan. April 28, 1997). A treating physician's opinion may be rejected

if his or her conclusions are not supported by specific findings, *Castellano,* 26 F.3d at 1029 (citing 20 C.F.R. § 404.1527(d)), and the ALJ gives specific, legitimate reasons for doing so, *Hargis v. Sullivan,* 945 F.2d 1482, 1489–90 (10th Cir.1991); *Sorenson v. Bowen,* 888 F.2d 706, 711 (10th Cir.1989).

The ALJ may reject the treating physician's opinion if the physician's records reflect only the plaintiff's subjective beliefs regarding his disability, *Murphy,* ·1997 WL 263739, at *4, if office records do not support the physician's conclusions, *James v. United States Dep't of Health & Human Servs.,* 47 F.3d 1178 (10th Cir. 1995) (citing *Eggleston v. Bowen,* 851 F.2d 1244, 1247 (10th Cir. 1988)), or if the physician's treatment records do not support the physician's conclusion, *Douglas v. Chater,* No. 94–2330, 1996 WL 42131, at *3 (D.Kan. Jan.29, 1996). The ALJ also may reject a treating physician's opinion if it is not well supported by clinical and/or laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Castellano,* 26 F.3d at 1027. Additionally, if the physician's opinion is conclusory, the ALJ may find that other medical evidence in the record outweighs the opinion. *Hall v. Chater,* No. 95–5002, 1995 WL 747416, at *2 (10th Cir. Dec.18, 1995).

In his findings, the ALJ noted that neither Dr. Petersen's clinical notes or his laboratory or diagnostic tests supported his opinion that plaintiff was totally disabled. The ALJ also found inconsistencies between the opinions of Dr. Petersen and other treating physicians. Based on those articulated findings, the ALJ determined that Dr. Petersen's opinion was not controlling. Except for rendering treatment to plaintiff for hypertension, Dr. Petersen's notes revealed that he had limited contact with plaintiff and that he conducted no independent testing or treatment of plaintiff. Moreover, Dr. Petersen neither conducted an examination or made personal observations of plaintiff's alleged dizziness or vertigo. Other than the complaints that plaintiff artic-

ulated, there is nothing in Dr. Petersen's notes that supports his conclusion that plaintiff was disabled.

Plaintiff responds that the neurological and neuropsychological tests performed at the VA hospital in 1994 provided clinical and laboratory support for Dr. Petersen's opinion. The court disagrees. The plaintiff underwent a neurological evaluation at the VA hospital on August 10, 1994. However, "a detailed exam" was not attempted. Plaintiff's examination was brief and consisted mainly of a subjective recitation of his ailments. After the examination, plaintiff was referred to Joseph Ryan, M.D., for a "formal neuropsychological evaluation."

Dr. Ryan, after an extensive examination of plaintiff, noted that "[t]here was no evidence of formal thought disorder" and "intellectually, he was functioning at an average range...." He further stated that "[m]emory examination demonstrated intact temporal orientation, appropriate knowledge of past presidents and major political events and above average attention-concentration." Dr. Ryan did note, however, that plaintiff's paragraph recall, word list memorization, mental tracking, speeded visual scanning, copying a Greek cross, and right hand finger tapping were all poor. Dr. Ryan concluded that "[i]f placed in situations that require the memorization of numerous bits of verbal information, he is likely to experience frustration and perform poorly. However, when the situation permits he should be able to compensate to a limited degree by relying on written notes and schedules." Dr. Ryan concluded that "the presence of emotional or personality disturbances ... may interact with ability deficits to cause poorer everyday functioning than would be predicted on the basis of the neuropsychological tests results alon[e]."

Contrary to plaintiff's contention, the ALJ noted that Dr. Ryan's report was inconsistent with Dr. Petersen's opinion that plaintiff suffered from a severe degree of functional limitation because of the dizziness and cognitive deficits. Specifically, the ALJ found that Dr. Ryan's observation that plaintiff re-

vealed no evidence of "formal thought disorder[,] unusual thought content," or decreased intellectual functioning contradicted Dr. Petersen's conclusion that plaintiff was totally disabled. In evaluating Dr. Ryan's conclusions, however, the ALJ also noted that Dr. Ryan had examined plaintiff on only one occasion and that plaintiff's test results were inconsistent with Dr. Ryan's own observations.[4]

Dr. Ryan's report was not the only medical evidence that the ALJ relied on in discounting Dr. Petersen's conclusion that plaintiff was totally disabled. The ALJ also examined the findings of other physicians who examined and treated plaintiff. Herbert Edmunson, M.D., was the neurologist who treated plaintiff following his closed-head injury on May 5, 1991. Within three weeks of the injury, Dr. Edmunson noted that plaintiff's dizziness, memory loss, and concentration were improved. By early June 1991, Dr. Edmunson reported that plaintiff's memory and judgment appeared to be intact, that he could tandem walk without difficulty, and that he presented no Romberg's signs. Because plaintiff's condition continued to improve, Dr. Edmunson released plaintiff to return to work following a final examination on July 23, 1991.

Plaintiff did not seek further treatment until May 12, 1992. At that time, plaintiff complained of balance and short-term memory problems. Dr. Edmunson reported that, upon examining plaintiff, he did not detect any new findings. Following this examination, Dr. Edmunson recommended that plaintiff undergo additional testing. Plaintiff underwent a carotid doppler study and brain map on May 14, 1992. The carotid doppler study ruled out the presence of significant extracranial vascular disease, while the brain map revealed abnormal cognitive evoked potential. Although plaintiff exhibited a slightly wide-based gait, a mildly positive Romberg's sign, and the "possibility

that [plaintiff] w[ould] be troubled by intermittent unsteadiness for a long time," Dr. Edmunson concluded that it was unnecessary to restrict plaintiff's activities.

On March 4, 1993, Franklin Boraks, M.D., a licensed clinical psychologist, performed a psychological examination of plaintiff. Dr. Boraks reported that he was not sure "whether [plaintiff] could sustain concentration or maintain appropriate work [pace] over a full eight-hour workday." Dr. Boraks noted, however, that tests of plaintiff's "immediate memory or concentration and attention are not remarkably low." Dr. Boraks concluded that there was no evidence that plaintiff had a mental impairment, that he had good interpersonal relationships, and that he had no difficulty understanding.

In a physical examination performed in July 1993, Larry Handlin, D.O., noted that plaintiff had no difficulty getting on or off the examining table or walking heel to toe. Dr. Handlin also observed that plaintiff had no difficulty squatting, that he could rise from a sitting position, and that he did not need the assistance of a walking device. During the examination, plaintiff informed Dr. Handlin that he enjoyed "golf and fishing." Additionally, plaintiff underwent a treadmill stress test in October 1993 in which he exercised for seven minutes and twenty-three seconds. The test terminated due to plaintiff's shortness of breath, not dizziness or vertigo.

Following evaluation of all the medical evidence, the ALJ found that the reports of Drs. Edmunson, Boraks, Ryan, and Handlin were inconsistent with, and did not support Dr. Petersen's conclusion that plaintiff was totally disabled. Specifically, the ALJ noted that while the other physicians performed examinations and tests on plaintiff for his complaints of dizziness and vertigo, Dr. Petersen's examination and treatment of plaintiff was for hypertension. The ALJ observed that Dr. Petersen's treatment notes con-

---

4. The MMPI-2 indicated plaintiff had problems with concentration and attention, while Dr. Ryan observed above average attention and concentration. This inconsistency also led the ALJ to

question the MMPI-2 finding that emotional or personality disturbances could interfere with plaintiff's work.

tained no objective findings of dizziness or vertigo. In fact, Dr. Petersen did not record one personal observation of dizziness, vertigo, or any other significant functional limitation. The ALJ observed that the medical evidence only supported a finding that plaintiff had diminished hearing in his left ear, occasional deficits of recent memory, and poor ability to remember numerous bits of verbal information.

In his findings, the ALJ stated that neither Dr. Petersen's clinical notes or his laboratory and diagnostic tests supported his conclusion that plaintiff was totally disabled. Additionally, the ALJ found that the above-cited inconsistencies between the opinions of Dr. Petersen and other treating physicians were a basis for discounting Dr. Petersen's opinion. Based on those articulated findings, the ALJ determined that Dr. Petersen's opinion was not controlling. The court finds that substantial evidence supports the ALJ's findings that Dr. Petersen's opinion was not controlling and that plaintiff was not conclusively disabled.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for summary reversal of the Commissioner's decision (Doc. 7) is denied.

**IT IS SO ORDERED.**