**John CERRONE, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

**No. Civ. 95–B–1253.**

United States District Court, D. Colorado.

May 7, 1998.

J.E. Losavio, Jr., J.E. Losavio, Jr. Law Office, Pueblo, CO, for plaintiff.

William G. Pharo, United States Attorney's Office, Civil Division, Denver, CO, for defendant.

## ORDER

BABCOCK, District Judge.

This case is before me on Magistrate Judge Patricia Coan's recommendation filed on April 17, 1998. The plaintiff has failed to file specific written objections to the recommendation. Accordingly, the plaintiff is barred from a *de novo* determination of the proposed findings and recommendations. *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), 28 U.S.C. § 636(b)(1). The court now being sufficiently advised,

IT IS ORDERED that the magistrate judges' recommendation is approved and adopted by the Court and the decision of the Commissioner is AFFIRMED.

John Cerrone, Plaintiff,

v.

John J. Callahan, Acting Commissioner of Social Security [1], Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

April 17, 1998

COAN, United States Magistrate Judge.

This matter is before the court on a May 12, 1997 special order of reference from District Judge Lewis T. Babcock. Plaintiff appeals the decision of the Commissioner finding that plaintiff's disability ceased November 1, 1970, thereby rendering him ineligible for benefits after that date. Judicial review of the Commissioner's decision is ap-

---

1. Mr. Callahan is now acting Commissioner of Social Security, replacing former Commissioner Shirley S. Chater.

propriate under 42 U.S.C. § 405(g). For the reasons discussed below, it is recommended that the decision of the Administrative Law Judge be affirmed.

### I. Background

Mr. Cerrone ("claimant" or "Cerrone"), who was born in Italy, and came to the United States when he was fourteen years old, testified he is not able to read and write English. R. 400. His date of birth is March 22, 1943. Cerrone filed for disability benefits on or about February 24, 1970, claiming that he had been unable to work due to a severe injury to his back, which required several fusions, including a failed fusion, and which was complicated by degenerative disc disease. *See,* Administrative Record 107–109, 114–115 [2]. Plaintiff was awarded and did continue to receive benefits until March 1, 1989 when the Social Security Administration ("SSA") determined that benefits should cease. R. 178, 184. The Administrative Law Judge ("ALJ") determined that Cerrone was no longer disabled because he had engaged in substantial gainful activity.

Between 1975 and 1979, Cerrone applied for several loans, and each time he applied, he indicated that he was self employed and that his self employment dated back to 1970. He further indicated on the loan applications that his monthly earnings totaled $1000 to $1200 per month. R. 144, 150, 154, 157, 159, 161.

The first hearing before an ALJ was held on October 27, 1989. At the hearing, several witnesses testified that claimant had not engaged in any work activity, either since 1970 or for as long as the witness had known Cerrone. R. 44, 45, 49, 50, 57, 60, 62, 64, 75, 76, 82, 83, 85, 89. Claimant asserted his Fifth Amendment privilege against self incrimination. R. 31.[3]

In his decision, the ALJ acknowledged that claimant was found to be disabled within the meaning of the Social Security Act beginning March 4, 1968. R. 34. The ALJ then found that the claimant had engaged in work activity since at least January of 1970, which constituted substantial gainful activity within the meaning of the Social Security Act and its accompanying regulations. R. 34–35. The ALJ based his decision on evidence which was obtained in a criminal investigation conducted by the State of Colorado which included several documents pertaining to loan applications made by the claimant between 1975 and 1979. R. 31. In the applications, claimant indicated he was self-employed since 1970 in auto repairs or body shop work netting $1000 to $1200 per month. R. 31–32.

The ALJ also considered a "special determination" of evidence compiled from a State of Colorado criminal investigation which included Cerrone's running a fireworks stand for about eight years, purchasing a home and an airplane as well as a bar in Phoenix, for which claimant and his wife made a $7000 down payment, and evidence that claimant had operated a series of illegal fronts for prostitution (R. 163–64) for which he was convicted. R. 32. A judgment of conviction had been entered July 25, 1988 finding Cerrone guilty of four counts of racketeering and receiving proceeds and one count of pandering in Jefferson County District Court. R. 390.[4]

Claimant's deposition in September 1985 from *People v. Cerrone,* Jefferson County, Colorado, 85–CV–2012, revealed that Cerrone owned a house at 3834 Pecos which burned down and he received $18,000 to $24,000 in insurance proceeds and then sold the property. R. 216. At the same time, he sold

---

2. All references to the "Record" are to the Administrative Record.

3. The ALJ warned Cerrone that if his invocation of the Fifth Amendment privilege was not supported in the law, the adverse inference rule would apply. R. 41–42. Following the hearing, the ALJ reasoned that claimant's assertion of his Fifth Amendment right was inapplicable to his voluntary request for benefits. As a result, the ALJ applied the adverse inference rule, conclud-

ed that if Cerrone had testified, the evidence would have been unfavorable to him, and held that Cerrone had engaged in substantial gainful activity since 1970. R. 32–33.

4. Claimant's exceptions to the decision resulting from the second SSA hearing state that Cerrone's conviction in the state court had been reversed by the State Court of Appeals and was pending review in the Colorado Supreme Court. R. 373, *see also* R. 411–412.

the house next door, which he also owned. R. 219. With that money, claimant assumed the mortgage and purchased a house in 1974 or 1975 for which the loan payments were $236 per month. R. 198–99, 216. The down payment was $7000. R. 215. Cerrone testified he purchased an airplane in 1974 or 1975 for $9500.[5] That plane was sold for $9000. R. 205. He bought another airplane for $6500. R. 206. Cerrone traded that plane and a 1927 Turin Ford for another plane. R. 207–208. Cerrone received $14,750 in insurance proceeds from the crash of the second plane. R. 212–13. Cerrone owned a 1932 Plymouth, for which he paid $125 and then sold for $18,500. R. 220–21. He owned a 1940 Ford.R. 290. Cerrone ran fireworks stands for about eight years. R. 252. In 1979 or 1980, Cerrone made over $5000 from a fireworks stand. Rec. 244–45. He also made campaign buttons, grossing $1500 to $3000 one year. R. 259.[6]

Claimant paid $7000 down to buy a bar in Phoenix (R. 263–64), and took a $104,000 note on the property. R. 265. Cerrone received $10,000 in insurance proceeds due to a fire in the bar and for "business interruption" caused by bad weather. R. 298–99. Cerrone owned a van while he was in Arizona which was stolen. His insurance company paid him over $17,000 for the loss. He bought a 1982 Honda with money from the sale of a '32 Plymouth and a '56 Ford.R. 270,289. Cerrone bought a '74 Cadillac for which he paid $2700 or $2800 and he owned a '76 Cadillac. R. 271. He borrowed $3000 and bought a truck in 1984. R. 278. Cerrone bought a 1973 GMC motor home for $5000 and the truck. R. 280. Cerrone's father gave him $5000 for the motor home. R. 282. Cerrone took the Fifth Amendment in response to questioning about bank accounts, business enterprises, dealings with Phil Apodaca, whether he made money from other sources (R. 250–51, 254–55, 275, 285, 300, 307, 308, 325), and questions about lingerie companies, boutiques (R. 309–311), and various business associations. R. 311–15, 332–34.

The ALJ found that claimant was able to engage in substantial gainful activity, based primarily on the representations made in the loan documents. R. 32. The ALJ further found that claimant's work activity was substantial gainful activity within the meaning of the Social Security Act and its regulations, and that the claimant consistently misrepresented his work activity and income to the SSA which misrepresentations constituted either fraud or similar fault to justify reopening and revision of his benefits award. R. 35.

Cerrone plead guilty to a count of social security fraud in the district court for the District of Colorado. R. 391–393[7]; see also, R. 374, 367.

On October 26, 1993, this court (in case number 91–C–1084) remanded the matter to the SSA for further proceedings. A second hearing was held July 18, 1994, at which the plaintiff was the sole witness. Cerrone testified that he had not worked at any job since 1971 except one year singing at an Italian restaurant earning $16 a week. R. 404, 407, 414. Cerrone stated, concerning the loan applications, that he told bank employee Alberta Jennings that he was on social security and "she says you got to put something down otherwise they won't give you the loan" (R. 408) as his explanation for stating that he was self employed and doing auto body work on the loan applications. Cerrone further explained that, with regard to the state criminal charges, his wife was paid $150 a week to work for Philip Apodaca, who operated massage parlors or bathhouses. R. 409. Claimant stated Apodaca was the only one who profited from the massage parlor business. Id.

The ALJ issued a decision on November 7, 1994 in which the ALJ found that claimant

---

**5.** At the second hearing, Cerrone said a friend bought him the airplane. R. 414.

**6.** Cerrone's wife stated in an affidavit that Cerrone did not work with the fireworks stand, but drove family members to the site of the stand. R. 353. She said they made less than $100.00 making buttons. id.

**7.** The plea agreement submitted with the record is unsigned; however, Cerrone refers to the agreement and having signed it in his testimony at the second hearing. See, R. 403.

was disabled within the meaning of the Social Security Act beginning March 4, 1968; that Cerrone had, on multiple occasions, in loan applications and in deposition, repeatedly stated that he had engaged in work activity since at least January 1970, and that he was no longer disabled within the meaning of the Act. R. 380–383.

Cerrone filed his complaint May 23, 1995, seeking reversal of the Appeals Council decision of March 22, 1995, which affirmed the ALJ. The Appeals Council's decision was the final decision of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g). *Fierro v. Bowen,* 798 F.2d 1351, 1354–55 (10th Cir.1986).

## II. Standard of Review

■ A recipient's benefits may be terminated if the Commissioner finds that the disabling condition has ceased, does not exist, or is not disabling. 42 U.S.C. § 423(f). The Commissioner's finding must be supported with substantial evidence that the recipient is "now able to engage in substantial gainful activity," and with substantial evidence demonstrating a specific change in the recipient's condition or circumstances as required by the statute. *Id; Glenn v. Shalala,* 21 F.3d 983, 987 (10th Cir.1994).

■ Judicial review of the Commissioner's decision is limited to whether the Commissioner's decision is supported by substantial evidence upon review of the record as a whole and whether he applied the correct legal standards. *Andrade v. Secretary of Health and Human Services,* 985 F.2d 1045, 1047 (10th Cir.1993); *Castellano v. Secretary of Health and Human Services,* 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Broadbent v. Harris,* 698 F.2d 407, 414 (10th Cir.1983) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if it is based on a mere scintilla of evidence, but the court will scrutinize evidence that constitutes mere conclusion. *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir.1988).

The court must affirm the Commissioner's decision if it is based on substantial evidence. *Eggleston v. Bowen,* 851 F.2d 1244, 1246 (10th Cir.1988).

■ The reviewing court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Hargis v. Sullivan,* 945 F.2d 1482, 1486 (10th Cir.1991).

## III. Administrative Law Judge's Decision

The issue is whether there was substantial evidence that claimant was engaged in substantial gainful activity in order to support the ALJ's termination of benefits after February 1971.

Persons who are disabled within the meaning of the Social Security Act are entitled to benefits. In *Reyes v. Bowen,* 845 F.2d 242, 243 (10th Cir.1988), the Commissioner established a five part sequential process to determine if a claimant is disabled. See also, 20 C.F.R. § 404.1520 (1997). "Disability" is defined as the "the inability to perform substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(a) (1997); 20 C.F.R. §§ 404.1505 and 416.905 (1997).

■ "Substantial gainful activity" means the performance of a substantial service with a reasonable regularity. *Markham v. Califano,* 601 F.2d 533, 534 (10th Cir.1979). It is work activity that is both substantial and gainful. Substantial work activity "involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a) (1997). Work is "gainful" if "it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b) (1997).

A claimant under the Social Security Act bears the burden of establishing a disability. The claimant must first demonstrate that he is not engaged in any substantial gainful activity. 20 C.F.R. § 404.1520(b) (1997).

The ALJ found that claimant was not credible because of his crime of dishonesty and false statements to the SSA. He found that Cerrone was engaged in substantial gainful activity because he had stated on several loan applications that he was employed and earning $1000 to $1200 per month, because he testified in a deposition that he had done some other work, and because he pleaded guilty to a charge of making a false representation on an SSA application. R. 380–81. The ALJ based his decision on a "special determination from Jim Boylan", dated 1/9/89, several loan applications indicating self employment earnings of $1000 to $1200 a month, Cerrone's deposition in which Cerrone "repeatedly stated that he had been running his own business and earning between $1000 to $1200 a month," and Cerrone's plea of guilty in federal court in which "he stipulated he had knowingly made a false statement to the Social Security Administration when he claimed not to have worked since he began receiving disability benefits." R. 380–81. Accordingly, the ALJ found that claimant had engaged in substantial work activity since 1970 (R. 381), and that benefits were to be terminated because Cerrone was no longer disabled as defined by the Social Security Act. R. 382–83.

## IV. Review

■ Cerrone contends that the ALJ's decision terminating benefits was based on an erroneous finding that Cerrone had engaged in substantial gainful activity since 1970. The SSA argues that Cerrone is collaterally estopped from relitigating the issue of his substantial gainful employment because he entered a guilty plea to making a false statement regarding his work activity to the Social Security Administration.

At the second nearing, Cerrone testified he had not worked, except for a job singing at an Italian restaurant for $16 a week. Several witnesses testified at the first hearing that they had known Cerrone and that he was unable to work and had not worked. In addition, there were several affidavits in the record stating that Cerrone did not work.

■ There was evidence that Cerrone bought, restored and sold vehicles from which he made a substantial profit. Moreover, while there was insufficient evidence of the ALJ's conclusion that Cerrone "repeatedly stated that he had been running his own business and earning between $1000 to $1200 a month" in his deposition, there was evidence of Cerrone's work activity when Cerrone stated his earnings from operating a fireworks stand were $3000 to $5000 and that on occasion, he made buttons. An applicant disqualified from physical labor should not be disqualified from benefits by the mere fact that he received income from capital assets; however, when he is able to derive substantial income from actively managing a business, he is not disabled. *Krumme v. Califano,* 451 F.Supp. 941, 943–44 (W.D.Mo.1978). Other evidence was in Cerrone's five loan applications on which he stated he was in the auto repair business earning $1000 to $1200 per month. Finally, Cerrone acknowledged in his plea agreement that "the State's prosecution had established that CERRONE was self-employed in illegal activities" and that the statement "I have not worked since I began receiving disability benefits" on SSA Form 821–F4 was not true. R. 393–93. There was thus substantial evidence that Cerrone profited from several business endeavors.

Cerrone and his wife attempted to explain Cerrone's deposition statements. In her affidavit, Cerrone's wife's said she operated the fireworks stand and that they made very little money from making buttons. With respect to the loan applications, according to Cerrone's affidavit (R. 366) and his testimony at the second hearing, he said he told a bank employee that his earnings were $1000 to $1200 a month from Social Security and that the bank employee was the one who completed the forms (*id.*), or told him he had to put down something else or he would not get the loan. R. 408.

In *Licor v. Washington Metropolitan Area Transit Authority,* 879 F.2d 901, 904–905 (D.C.Cir.1989), a claimant under the Longshore and Harbor Workers' Act lied on a loan application, stating that he was self employed and earning $21,000 a year. The ALJ denied benefits based on Licor's general experience and his family lifestyle, concluded

that Licor told the truth on his loan application and was capable of earning $21,000 a year, and denied benefits. On appeal, the court remanded, finding that the false statement on the loan application was insufficient evidentiary support to deny benefits. Here, however, the record is not restricted to loan applications. Instead there is other substantial evidence of Cerrone's work activity in his deposition and in his agreement to the factual stipulations in his plea agreement.

The unsigned plea agreement (R. 391–393) was made an exhibit in the second hearing before the ALJ. The parties stipulated that the state's prosecution had established that Cerrone was self employed in illegal activities and that the five loan applications signed by Cerrone were sufficient to substantiate work activity constituting "substantial gainful activity" which disqualified Cerrone from disability benefits. R. 392. The stipulation further read that "Cerrone completed Form SSA–821–F4 "Work Activity Report–Employee" on which he stated 'I have not worked since I began receiving disability benefits.' John Cerrone made that statement knowing that it was not true, making a false statement, in violation of 18 U.S.C. § 1001." R. 393.

Questions of evidentiary weight and witness credibility are within the province of the Commissioner, whose judgment on such matters is entitled to considerable deference. *See Gay v. Sullivan,* 986 F.2d 1336, 1339 (10th Cir.1993); *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir.1992). A credibility determination made by the ALJ is generally binding upon review. *Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir.1990) (internal citations omitted).

The ALJ here concluded that Cerrone was telling the truth in his deposition and on his loan applications, and that he lied on SSA forms. Based on Cerrone's testimony about buying, repairing and selling antique cars, the ALJ had evidentiary support for his conclusion that Cerrone was in the auto repair business as he stated on his loan applications. The ALJ's finding that Cerrone had engaged in or was capable of engaging in substantial gainful work activity was appropriately based on the loan applications, Cerrone's deposition, and his guilty plea in federal court, in which the ALJ said "he stipulated he had knowingly made a false statement to the Social Security Administration when he claimed not to have worked since he began receiving disability benefits."

It is not the task of this court to reweigh the evidence and arrive at a different conclusion from the administrative law judge. There is sufficient evidence in the form of Cerrone's own statements and his acceptance of the stipulated facts in the plea agreement to constitute substantial evidence that Cerrone was engaged in substantial gainful activity to support the ALJ's decision terminating benefits.

## V. Recommendation

Accordingly, for the reasons set forth above, it is recommended that the decision of the Commissioner be affirmed.

**Within ten days after being served with a copy of the recommendation, any party may serve and file written objections to the recommendation as provided by rules of court. The district court judge shall make a de novo determination of those portions of the recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the recommendations made by the magistrate judge. The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**